IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BILLY E. PARKER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:17CV882 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Billy E. Parker, Jr., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 11; see also Docket Entry 10 (Plaintiff's Memorandum); Docket Entry 12 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

### I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of May 8, 2013. (Tr. 245-57.) Upon denial of those applications initially (Tr. 81-118, 159-64) and on reconsideration (Tr. 119-58,

167-75), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 178-79). Plaintiff (proceeding pro se), his girlfriend, and a vocational expert ("VE") testified at the hearing. (Tr. 37-74.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 8-21.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 242-44, 434-36), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2016.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since May 8, 2013, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: myocardial infarction, coronary artery disease, status-post bypass repair surgery, asthma, obstructive sleep apnea, diabetes mellitus, ischemic optic neuropathy, glaucoma, hyperthyroidism, depression, and attention deficit hyperactivity disorder.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [he] may lift and carry 20 pounds occasionally and 10 pounds frequently; he may push and pull as much as he can lift

and carry; [he] may sit for 6 hours, stand for 6 hours, and walk for 6 hours in an 8-hour day; he may perform no acts of far acuity or depth perception on his right side; [he] may have occasional exposure to fumes and pulmonary irritants; and he retains the capacity to perform simple, routine and repetitive tasks.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from May 8, 2013, through the date of this decision.

(Tr. 13-20 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

## **A. Standard of Review**

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B. Assignments of Error

According to Plaintiff, the Court should overturn the ALJ's finding of no disability on these grounds:

1) "the ALJ did not explain why limitations documented in the medical opinions [to which] he gave significant weight are not included in the [RFC]" (Docket Entry 10 at 2 (bold font and single-spacing omitted)); and

2) "the ALJ did not give a complete function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] difficulties in the broad areas of functioning and did not make a complete finding as to [Plaintiff's] mental [RFC]" (id. at 8 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 12 at 5-22.)

### 1. Physical RFC

Plaintiff's first assignment of error asserts that "the ALJ did not explain why limitations documented in the medical opinions [to which] he gave significant weight are not included in the [RFC]." (Docket Entry 10 at 2 (bold font and single-spacing omitted).) In particular, Plaintiff argues that, although the ALJ gave significant weight to the opinions of Plaintiff's treating cardiologist, Dr. Peter M. Jordan, the ALJ neither incorporated Dr. Jordan's opinion that Plaintiff could not reach overhead or squat into the RFC or dispositive hypothetical question, nor explained

8

their omission. (See id. at 3, 5-6 (citing Tr. 15-19, 67-72, 788).) Further, Plaintiff maintains that those errors do not qualify as harmless, because all three jobs cited by the VE (and adopted by the ALJ) require both reaching and squatting. (See id. at 4, 6.) Plaintiff has shown prejudicial error with respect to his physical RFC.

Even where an ALJ accords a significant amount of weight to a treating provider's opinions, the ALJ labors under no obligation to adopt all of that provider's limitations in the RFC. See Bacnik v. Colvin, No. 1:12CV801, 2014 WL 3547387, at 4 n.7 (M.D.N.C. July 17, 2014) (unpublished) (Eagles, J.). However, "[i]f the ALJ's RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p") (emphasis added).

On December 17, 2013, Dr. Jordan offered the opinion that, "due to [Plaintiff's] ongoing chest well pain," he should "not . . . lift any objects over 25 [pounds,] . . . should not be raising his arms above his head and no squatting." (Tr. 788.) The ALJ analyzed those opinions as follows:

> I give significant weight to the opinion of [Dr. Jordan], [Plaintiff's] cardiologist, who stated that [Plaintiff] is unable to perform the heavy lifting required in his prior work, and should not lift objects over 25 pounds, should not raise his arms above his head, and should not squat. This opinion is supported by [Plaintiff's]

9

>    history of heart surgery, and Dr. Jordan's relationship
>    as a treating specialist.

(Tr. 18.)  As Plaintiff argues (see Docket Entry 10 at 3, 5-6), the ALJ's RFC prohibits neither overhead reaching nor squatting (see Tr. 15), and the ALJ did not expressly explain in the decision why, despite giving Dr. Jordan's opinions overall "significant weight" (Tr. 18), the ALJ did not adopt Dr. Jordan's specific opinions as to overhead reaching and squatting (see Tr. 15-19).

Moreover, the ALJ's decision, even when viewed in its totality, does not adequately explain why the ALJ did not incorporate Dr. Jordan's restrictions on overhead reaching and squatting into the RFC and dispositive hypothetical question.  The ALJ credited the reconsideration level state agency medical consultant's opinion that Plaintiff remained capable of a limited range of light work that did not include limitations on overhead reaching or squatting.  (See Tr. 19, 131-33, 150-52.)  However, the consultant's analysis of Dr. Jordan's opinions suffers from the same shortcoming as the ALJ's parallel evaluation, i.e., the consultant accorded "great weight" to Dr. Jordan's opinions because "they [we]re based [sic] by a treating source and reflect[] functional abilities[ c]onsistent [with] medical records in [the] file" (see Tr. 130, 149), but neither included limitations on overhead reaching and/or squatting in the RFC nor explained the omission of those limitations (see Tr. 131-33, 150-52).  Thus, the ALJ's failure to explain why he rejected Dr. Jordan's overhead

10

reaching and squatting restrictions runs afoul of SSR 96-8p. See SSR 96-8p, 1996 WL 374184, at *7 (providing that, "[i]f the ALJ's RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted" (emphasis added)).

Furthermore, Plaintiff has demonstrated that the ALJ's error with respect to the overhead reaching restriction qualifies as prejudicial, warranting remand. As Plaintiff argues, "[a] review of the information in the Selected Characteristics of Occupations [Defined in the Revised Dictionary of Occupational Titles] ('[SCO]'), companion publication to the Dictionary of Occupational Titles ('[DOT]'), reveals that the fast food worker job requires constant reaching while the inspector and hand packager and cafeteria attendant jobs both require frequent reaching." (Docket Entry 10 at 4 (citing Docket Entries 10-1 to 10-3).) Because "[t]he [DOT] defines reaching as '[e]xtending hand(s) and arms(s) in any direction'" (id. (quoting SCO, App'x C, Physical Demands § 8 (U.S. Dep't of Labor 1993))), without specifying the direction of the required reaching, the possibility remained that all three jobs cited by the VE (and adopted by the ALJ) required some degree of overhead reaching. Thus, had the ALJ adopted Dr. Jordan's overhead reaching restriction, an apparent, unresolved conflict would have existed "between the [VE's] testimony and the [DOT/SCO] as to overhead reaching" (id. at 5 (citing Pearson v. Colvin, 810 F.3d

11

204, 211 (4th Cir. 2014) (remanding where ALJ failed to resolve apparent conflict between VE's testimony that individual limited to occasional bilateral overhead reaching could perform certain jobs and DOT's description for those jobs reflecting frequent reaching))).

Plaintiff also maintains that the ALJ's failure to adopt Dr. Jordan's squatting restriction in the RFC and dispositive hypothetical question does not qualify as "harmless[ because t]he Bureau of Labor Statistics ('BLS') indicates the jobs identified by the [VE] and accepted by the ALJ do have squatting." (Id. at 6.) More specifically, Plaintiff asserts that, "[a]ccording to the BLS[,] [for] almost [two-thirds] of both the fast food workers and cafeteria attendants[,] crouching, i.e.[,] squatting, is required[a]nd it is required for almost one-third of the inspectors and hand packagers." (Id.) Plaintiff notes that "[t]he BLS classifies jobs by the Standard Occupational Classification System ('SOC') . . . rather than using [DOT] codes," as well as that "the [DOT] was last updated in 1991" and that "no job information source with the current requirements of jobs classifies jobs by [DOT] code" (Id.)

Plaintiff's arguments fail for three reasons. First, Plaintiff did not provide any citations (much less attach any materials) to support his assertion that, "[a]ccording to the BLS[,] [for] almost [two-thirds] of both the fast food workers and cafeteria attendants[,] crouching, i.e.[,] squatting, is required[

12

a]nd it is required for almost one-third of the inspectors and hand packagers." (Id.) Second, the BLS and SOC do not constitute recognized vocational sources under the Commissioner's regulations. See 20 C.F.R. §§ 404.1566(d), 416.966(d) (stating that Commissioner "will take administrative notice of reliable job information available from various governmental and other publications," and listing as "example[s]" the DOT, County Business Patterns ("CBP"), Census Reports, Occupational Analyses prepared for the Commissioner by state employment agencies, and the Occupational Outlook Handbook ("OOH") ).[5] Third, the same materials on which Plaintiff relied to demonstrate that all three jobs cited by the VE and adopted by the ALJ required reaching (see Docket Entry 10 at 4 (citing Docket Entries 10-1 to 10-3)), reflect that none of those jobs require any crouching (see Docket Entries 10-1 to 10-3). See also DOT, No. 311.472-010 (Fast-Foods Worker), 1991 WL 672682 (G.P.O. 4th ed. rev. 1991), DOT, No. 559.687-074 (Inspector and Hand Packager), 1991 WL 683797, DOT, No. 311.677-010 (Cafeteria Attendant), 1991 WL

---

[5] "[T]he last publication of the [DOT] was in 1991, [and] the last significant update of the occupation information it contains occurred with the 1977 edition." Boston v. Colvin, No. 4:14-CV-206-D, 2016 WL 721563, at *15 (E.D.N.C. Feb. 2, 2016) (unpublished), recommendation adopted, No. 4:14-CV-206-D, 2016 WL 738762 (E.D.N.C. Feb. 23, 2016) (unpublished) (citing Government Accountability Office ("GAO") Report 12-420, Highlight: Modernizing SSA Disability Programs (June 2012)). As a result, the Commissioner plans to develop an Occupational Information System to supplant the DOT as the Social Security Administration's primary vocational resource, see 73 Fed. Reg. 78864-01, 2008 WL 5329223 (Dec. 23, 2008); Dimmett v. Colvin, 816 F.3d 486, 489 (7th Cir. 2016) (noting that the Commissioner remains "aware of the obsolescence of the [DOT] . . . [and] is developing its own parallel classification system").

672694.[6]  Thus, the ALJ's failure to either adopt Dr. Jordan's squatting restriction or adequately explain its omission remains harmless under the circumstances of this case.  See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

In sum, Plaintiff has demonstrated that the ALJ reversibly erred by not including Dr. Jordan's restriction on overhead reaching in the RFC and dispositive hypothetical question or, in the alternative, providing an adequate explanation for its omission.

## 2. Mental RFC

Lastly, Plaintiff maintains that "the ALJ did not give a complete function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] difficulties in the broad areas of functioning and did not make a complete finding as to [Plaintiff's] mental [RFC]."  (Docket Entry 10 at 8 (bold font and single-spacing omitted).)  More specifically, Plaintiff argues

---

[6] The Commissioner and the DOT/SCO both utilize the term "crouching" rather than "squatting"; however, courts have found that the SCO's definition of "crouching," i.e., "[b]ending body downward and forward by bending legs and spine," SCO, App'x C, Physical Demands, § 6, equates to squatting.  See Lawson v. Astrue, No. 3:10-212-HFF-JRM, 2011 WL 4502026, at *11 (D.S.C. July 29, 2011) (unpublished) (citing Chavez v. Astrue, 699 F. Supp. 2d 1125, 1133 n.5 (C.D. Cal. 2009) (finding "crouch" and "squat" as "essentially synonymous")), recommendation adopted, 2011 WL 4527370 (D.S.C. Sept. 29, 2011) (unpublished).

14

that, despite the ALJ's finding that Plaintiff "ha[d] moderate difficulties in maintaining concentration, persistence, or pace [('CPP')], . . . the ALJ did not determine [Plaintiff's] ability to stay on task" in the RFC in violation of SSR 96-8p, and Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Docket Entry 10 at 10.) According to Plaintiff, "[t]he ALJ mistakenly discussed only [Plaintiff's] capability to perform simple routine tasks, not his ability to stay on task" (id. at 11), despite the fact that "only the latter determination would completely account for [Plaintiff's] limitation in [CPP]" (id. (citing Mascio, 780 F.3d at 638)). Plaintiff's contentions do not warrant relief.

The United States Court of Appeals for the Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony,

> medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians' opinions). Here, the ALJ's decision provides a sufficient explanation as to why restrictions to "simple, routine and repetitive tasks" (Tr. 15) sufficiently accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ noted Plaintiff's "reports [of] memory loss and problems concentrating" (Tr. 14), but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision" (Tr. 16). Moreover, Plaintiff did not challenge the ALJ's assessment of Plaintiff's subjective symptoms. (See Docket Entry 10 at 2-13.)

Second, the ALJ summarized the mental health evidence of record, making the following, pertinent observations:

16

- "At a mental consultative examination in November 2013, . . . [Plaintiff] presented as pleasant, with good communication, mellow mood, . . . flexible appropriate affect[,] . . . thoughts [that] were logical, sequential, and based upon reality, . . . memory [that] was intact, . . . . [and] abstract thinking, judgment, and insight [that] were noted to be normal" (Tr. 17; see also Tr. 775-78);

- The mental consultative examiner diagnosed Plaintiff "with major depressive disorder, in remission with medication" (Tr. 17 (emphasis added); see also Tr. 777);

- "[I]n July 2013, [Plaintiff] reported feelings of increased irritability and thoughts of death since running out of his medication four days prior . . . but his judgment, thought content, and memory were normal" (Tr. 17-18 (emphasis added); see also Tr. 727);

- "In June 2014, [Plaintiff] reported a past diagnosis of ADHD, and presented with a flat affect and mood, but intact cognition and memory" (Tr. 18 (emphasis added); see also Tr. 895-900);

- "In November 2015, treatment notes indicate an increase in mood swings with noncompliance" (Tr. 18 (emphasis added); see also Tr. 889); and

- Plaintiff's "psychological records indicate that he retains a significant degree of function when compliant with his medications" (Tr. 18).

Third, the ALJ discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 18-19.) In that regard, the ALJ gave "partial weight" to the state agency psychological consultant at the reconsideration level of review (Tr. 19), who found that, notwithstanding moderate limitation in CPP (see Tr. 128, 147), Plaintiff remained able to perform simple, routine, repetitive tasks (see Tr. 135, 154). The

17

ALJ also accorded "partial weight" to the opinion of the consultative mental examiner that Plaintiff remained able to perform simple, routine, repetitive tasks. (Tr. 18; see also Tr. 778.)

Under these circumstances, the ALJ adequately explained why a restriction to "simple, routine and repetitive tasks" (see Tr. 15) sufficiently accounted for Plaintiff's moderate limitation in CPP. See Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where ALJ relied on opinions of consultative examiner and state agency psychologist that, notwithstanding moderate deficit in CPP, the plaintiff could sustain attention sufficiently to perform SRRTs).

In sum, Plaintiff's second issue on review does not entitle him to reversal or remand.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings, to include reevaluation of Dr. Jordan's opinions and their resultant impact on Plaintiff's RFC in accordance with SSR 96-8p. As a result, Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket

Entry 9) should be granted in part, i.e., to the extent it requests remand, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) should be denied.

                                         /s/ L. Patrick Auld
                                            **L. Patrick Auld**
                                   **United States Magistrate Judge**

February 15, 2019